UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL C. RYAN                                                                            PLAINTIFF

V.                                                        CIVIL ACTION NO. 3:18-CV-558-DPJ-FKB

UNITED STATES DEPARTMENT                                                       DEFENDANT
OF COMMERCE

ORDER

Pursuant to a text order entered on January 28, 2020, the discovery period in this Title VII case ended on March 20, 2020. Defendant the United States Department of Commerce (the Department) then moved for summary judgment. On March 18, 2021, the Court granted that motion in part and stayed the case due to the ongoing Coronavirus pandemic. *See* Order [74]. Plaintiff Michael C. Ryan now asks the Court to lift that stay, reopen discovery, and allow him to supplement his disclosures. Mot. [76]; Mot. [77]; Mot. [78].

I.      Facts and Procedural History

The factual allegations are set forth more fully in the Court's previous Order [74]. In general terms, Ryan says his supervisor William Parker discriminated against him in his employment with the Department and retaliated against him after he complained about the discrimination. Based on those concerns, Ryan filed a May 2, 2017 EEO complaint with the Department. He then filed this lawsuit on August 17, 2018. Ryan filed a second EEO complaint on September 11, 2018, and on July 25, 2019, he filed an Amended Complaint [21] in this case.

On January 16, 2020, through discovery obtained in a separate case, Ryan's counsel learned that "Parker had recorded a meeting he had with [Ryan] to discuss [Ryan]'s mid-year performance evaluation in April 2019." Def.'s Resp. [79] at 3–4. Two weeks later, Ryan deposed Parker and "questioned [him] about his recording of [Ryan] during the mid-year

evaluation." *Id.* at 4.  Though about two months of the discovery period remained, Ryan apparently did not seek further discovery regarding the recording.

Instead, the Department filed a motion for summary judgment, which the parties fully briefed.  After Ryan responded to the Department's summary-judgment motion, but before the Court ruled, he filed a third EEO complaint on May 13, 2020.  In it, Ryan alleged that Parker had committed additional acts of discrimination and retaliation by surreptitiously recording their meeting and emailing a copy of the audio file to in-house counsel.

On March 18, 2021, the Court granted the Department's summary-judgment motion in part, dismissing Ryan's race-discrimination and retaliation claims.  Ryan's lone claim remaining for trial is his Title VII hostile-work-environment claim, but the case is not presently set for trial because of a backlog in the Court's trial docket due to the Coronavirus pandemic.

Ryan now seeks more discovery regarding information he discovered during the administrative investigation into his third EEO complaint.  Specifically, the Department produced a January 8, 2020 email "referring to the verbal admonishment of William Parker for the surreptitious recording." Mot. [76] ¶ 4.  Ryan says this contradicts Parker's deposition testimony that he was not disciplined for the surreptitious recording, and he wants to ask several witnesses for further details regarding Parker's discipline.  The investigation also uncovered an October 2019 email among various Department employees "about the propriety of recordings" that Ryan believes is relevant to this case and should have been produced in discovery.  *Id.* ¶ 6.  Finally, in response to the May 2020 EEO complaint, Parker's supervisor, Steven Cooper, stated that "he became aware staff were alleging racism by Mr. Parker" in June 2019.  Cooper Decl. [76-4] at 3.  Ryan wants to know more about what Cooper learned in June 2019.

2

Believing that all of this should be fleshed out in this case, Ryan filed his motions to lift the stay, reopen discovery so he can depose or re-depose four witnesses, and supplement his disclosures. The Department opposes Ryan's requests.

II.     Analysis

Federal Rule of Civil Procedure 16(b) governs Ryan's motion to reopen discovery. It provides: "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The good cause standard requires a showing by the movant that 'the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 602 (5th Cir. 2021) (quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). "The four factors relevant to a determination of good cause include: '(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Reeves v. BP Expl. & Prod. Inc.*, No. 1:19-CV-456-LG-RPM, 2021 WL 1111171, at *2 (S.D. Miss. Feb. 24, 2021) (quoting *Batiste v. Lewis*, 976 F.3d 493, 500 (5th Cir. 2020)). The Court will take each in turn.

A.     Reason for Extension

Courts within the Fifth Circuit have described the explanation for needing more time as "[t]he most important factor." *Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-CV-1455-WCB, 2017 WL 119633, at *3 (E.D. Tex. Jan. 12, 2017) ("The most important factor bearing on the 'good cause' inquiry under Rule 16(b)(4) is whether the party seeking to modify the scheduling order can show that it has been diligent in pressing its claims but despite its diligence could not reasonably have met the scheduling deadline.").

3

Here, Ryan says he did not ask the Court to reopen discovery earlier "because he had no knowledge of the existence of information contained in [the] emails . . . or the declarations" prepared in response to his third EEO complaint before the discovery period closed. Reply [83] at 5. Fair enough, but he discovered the surreptitious recording in January 2020—two months before the discovery deadline—yet waited until May 2020 to file the additional EEO complaint that generated the new information. Moreover, he knew from Cooper's deposition that Cooper had been informed of complaints in the office, yet Ryan did not further pursue that line of questions. *See infra*. Accordingly, this factor weighs against reopening discovery.

  B.  Importance of the Evidence

The next factor—importance of the evidence—weighs heavily against modifying the scheduling order and reopening discovery at this late date. The only remaining claim is the race-based hostile-work-environment claim. As the Department points out, Ryan's legal claims based on the recording were not exhausted before this suit was filed. Indeed, Ryan was recorded roughly 8 months *after* he sued the Department.

Ryan responds by saying the "factual basis" of the new "claim is part of the common . . . nucleus of operative facts in the instant litigation." *Id.* at 3. Maybe, but Ryan still fails to show that he exhausted a claim based on the recording, and, though he saw a need to exhaust that claim through another EEO complaint, he never moved to amend his Complaint in this case after pursuing those administrative remedies. Whether the acts related to the recording will be admissible to support the existing claim will be decided later, but to the extent they are intended to reflect an independent basis for liability the claim has not been exhausted and will not be presented to the jury. *See Story v. Gibson ex rel. Dep't of Veteran Affairs*, 896 F.3d 693, 698

4

(5th Cir. 2018) ("Before seeking relief in federal court, Title VII plaintiffs must exhaust their administrative remedies.").

Assuming *arguendo* that these events are admissible to support the exhausted race-based hostile-work-environment claim, most of the information Ryan now seeks would be superfluous. Ryan says he wants to depose two new witnesses—an in-house attorney and the National Weather Service's Chief Operating Officer—"and re-depose Parker and Cooper regarding the newly discovered evidence: the details of Parker's discipline; the information received by Cooper about racial issues in the Jackson NOAA Office; and the reasons [two emails] were not produced in response to discovery in this instant action." Mot. [76] ¶ 10.

For starters, Ryan already possesses information regarding disciplinary actions against Parker, and further details would not tend to establish the existence of a race-based hostile work environment. As to the revelation that Cooper's summer 2019 visit to the Jackson NWS office was due, in part, to his awareness that "staff were alleging racism by Mr. Parker," that fact is not entirely new. Cooper Decl. [76-4] at 3. Cooper testified in his September 2019 deposition that when he visited the Jackson NWS office in June 2019 he "obviously . . . knew there were complaints that had been expressed." Cooper Dep. [76-5] at 15. The topic was not explored further, and Cooper's more specific subsequent statement in his declaration does not make his earlier testimony inaccurate. Nor does any of this show it is necessary to reopen discovery more than a year after it ended. To the extent there is some contradiction between Cooper's later statement and his earlier testimony, Ryan can flesh that out on cross-examination.

That leaves Ryan's desire to obtain discovery on the Department's reason for not producing two emails Ryan now possesses. The Department argues that it did not produce the emails because they were not responsive to any discovery request Ryan propounded.

5

Specifically, it says Ryan's document requests were temporally limited through the date of this action or the date the requests were propounded—both of which were before the emails were written.

In reply, Ryan says the emails were responsive to Request for Production 19, which sought

> all documents, files, emails, government phone records including text messages and numbers called, investigative work product, work related social media postings, recordings, notes, calendar events, conference calls that ***authorizing*** [sic] William Parker, Steven Cooper, Jose Garcia, Mike Coyne, Cheryl Duffner, Kenneth Bailey, Michael Gallant, John Duxbury, and Chad Entremont ***to operate outside and in conflict with United States laws, Departmental and agency policies and directives.***

Reqs. [83-2] at 9 (emphasis added). But nothing in either email Ryan obtained "authoriz[ed]" anyone "to operate outside and in conflict with" laws or Department policies. *Id.* He has not shown a deliberate discovery violation, and he now possesses the two emails. In sum, Ryan has not shown that amendment of the scheduling order is important to his case.

      C.      Prejudice and Cure

The third and fourth good-cause factors address prejudice and whether an extension would cure it. The Department says it will be prejudiced by reopening discovery insofar as it would be required to devote additional "time, resources, and attention" to a case that is otherwise ready for trial. Resp. [79] at 14. Given the extensive summary-judgment briefing and the ready status of this case, the Department has shown prejudice. *See S&W Enters.*, 315 F.3d at 536–37 (finding prejudice where parties "would be required to conduct additional discovery").

And while "a continuance might . . . cure[] any prejudice, such a remedy would . . . delay[] resolution of the case and add[] to [the Department's] expenses." *Garza v. Allstate Tex. Lloyd's Co.*, 284 F. App'x 110, 113 (5th Cir. 2008). This case has been pending for nearly three years, and it is ready for trial as soon as the Court can get it set. Ryan says that the pandemic-

related stay and delay "ha[ve] rendered inconsequential the impact of any [further] delay in this case." Reply [83] at 1.  But, if anything, the pandemic-related stay militates against reopening discovery and creating further delay.  As soon as the Court can set civil cases for trial, Ryan's case is near the top of the list.

Applying the good-cause factors to the facts and procedural posture of this case, the Court concludes Ryan has not shown good cause to amend the scheduling order.  As to his request to supplement his disclosures, he never specifies how he wants to supplement, and the Department was therefore unable to meaningfully respond to his request.  If Ryan wishes to supplement his disclosures out of time, then he should file a motion that details the way in which he wants to supplement.  Finally, because the Court has denied the substantive relief requested, there is no reason to lift the stay at this time, but the parties are instructed to contact Courtroom Deputy Shone Powell to set the matter for pretrial conference.  The date selected should provide sufficient time to fully brief motions in limine.

III.   Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Ryan's motions to reopen discovery [76], supplement disclosures [77], and lift the stay [78] are all denied.

**SO ORDERED AND ADJUDGED** this the 23rd day of July, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE